UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD GOLDFADEN,

          Plaintiff,

v.

US DEPARTMENT OF HEALTH AND
HUMAN SERVICES, SECRETARY OF, et al.,

          Defendants.

_____/

Case No. 2:24-cv-13010

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO
DISMISS (ECF Nos. 27; 28) AND DENYING PLAINTIFF'S MOTION FOR
INJUNCTIVE RELIEF AS MOOT (ECF No. 36)**

In this case, Plaintiff Howard Goldfaden seeks mandamus relief from United

States Department of Health and Human Services (DHHS) Secretary (the Secretary)

and a private entity operating as a Medicare Administrative Contractor,

AdvanceMed Corporation (AdvanceMed).[1] Goldfaden also seeks damages for fraud

against AdvanceMed, alleging that it did not properly review his rebuttal statement

with accompanying documentation. For the reasons provided below, this Court will

---

[1] Goldfaden also sued two other MACs—Empower AI and NCI Information
Systems, Incorporated—which Goldfaden identifies as successors of AdvanceMed
and thereby refers to these all three corporate Defendants as simply "AdvanceMed."
ECF Nos. 18 at PageID.355, 357; 30 at PageID.619 n.1; 31 at PageID.652 n.1.  For
consistency, this Court follows suit.

grant Defendants' motions to dismiss and deny Goldfaden's motion for injunctive relief as moot.

## I. BACKGROUND

### A. Medicare Act Regulations

"Medicare is a federal health insurance program that provides health insurance benefits to people 65 years of age or older, disabled people, and people with end-stage renal disease." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008) (citing 42 U.S.C. § 1395c). "Medicare pays for items and services that are 'reasonable and necessary for the diagnosis or treatment of illness or injury or to improve functioning of a malformed body member.'" *Gen. Med., P.C. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, No. 22-cv-11976, 2023 WL 6164556, at *1 (E.D. Mich. Sept. 21, 2023) (quoting 42 U.S.C. § 1395y(a)(1)(A)). To manage and administer Medicare payments, the DHHS enters into contracts with third-party companies—called Medicare Administrative Contractors ("MACS")—that are authorized to investigate medical providers for potentially fraudulent billing practices. 42 U.S.C. § 1395u(a).

### 1. Payment Suspension Procedure

To regulate Medicare payments, the Secretary and authorized MACS have authority "to temporarily suspend and withhold a supplier's Medicare payments when the Secretary receives 'a credible allegation of fraud' against the" provider,

and to recoup funds from an overpaid provider. *Id.* at *2 (quoting 42 U.S.C. § 1395y(o)(1)); *see also* 42 C.F.R. § 405.371(a)(2). "[T]he purpose of a suspending payment is to verify whether, and how much, payment was actually due to the provider for the past claims and to ensure that, if a provider or supplier was overpaid, sufficient funds are available to recover the overpayment." *Midwest Fam. Clinic, Inc. v. Shalala*, 998 F. Supp. 763, 766 (E.D. Mich. 1998) (quoting 61 Fed. Reg. 63740, 63742–43 (Dec. 2, 1996)).

Procedurally, once a payment suspension is imposed against a provider, the provider may submit a rebuttal statement explaining why the suspension should be lifted. *See id.* at 767; *see also* 42 C.F.R. § 405.372(b)(2). The Secretary then reviews this statement, "consider[s] it together with other pertinent evidence submitted," and issues a written decision to the provider with a clear explanation for its decision. *Midwest Fam. Clinic*, 998 F. Supp. at 767; *see* 42 C.F.R. § 405.375(b)(2). "Any decision by the Secretary to reject the rebuttal statement and continue the suspension during the investigation 'is not appealable.'" *Gen. Med.*, 2023 WL 6164556, at *2 (quoting 42 C.F.R. § 405.375(c)). "During the suspension, the payments that would otherwise be made to the [provider] are set aside, as if in escrow, until the investigation is completed." *Id.* (cleaned up). But the suspension may eventually "culminate in an appealable decision" if the provider's "claims are subsequently

denied" or the provider becomes excluded from the Medicare program. *Midwest Fam. Clinic*, 998 F. Supp. at 767 (cleaned up).

### *2. Recoupment Procedure*

Once the investigation concludes, if the Secretary determines that the provider was paid for services that were not reasonable or necessary, the Secretary issues an overpayment determination and seeks a recoupment of the amount Medicare overpaid, that is, "recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying [any] amount withheld to the indebtedness." 42 C.F.R. § 405.370. An overpayment determination enables an administrative appeal process through which the provider may exercise their right to challenge the Secretary's determination. *Gen. Med.*, 2023 WL 6164556, at *2 (collecting statutes and cases).

Appealing an overpayment determination consists of four steps. *Id.* at *3. First, the provider can ask a MAC for a redetermination. 42 C.F.R. § 405.948. The MAC then performs an independent review of the initial overpayment determination and issues a redetermination. *Id.* Second, if the provider wishes to challenge an unfavorable redetermination, they may seek reconsideration from a qualified independent contractor (QIC) who "reviews any evidence the [provider] provides and reaches an independent determination." *Gen. Med.*, 2023 WL 6164556, at *3 (citing 42 C.F.R. §§ 405.960, 405.966(a)). Third, the provider can appeal a QIC's

unfavorable decision by appearing before an Administrative Law Judge (ALJ) for a *de novo* review of the overpayment determination. 42 C.F.R. §§ 405.1000(a), 405.1042(a). Fourth, the provider can challenge an unfavorable ruling from the ALJ by appealing to "the Medicare Appeals Council, which issues the Secretary's final decision." *Gen. Med.*, 2023 WL 6164556, at *3 (citing 42 C.F.R. §§ 405.1100(a), 405.1130). Upon receipt of this final decision, the provider can then seek judicial review of the overpayment determination in federal court. *See Westchester Mgmt. Corp. v. Dep't of Health & Hum. Servs.*, 948 F.2d 279, 281 (6th Cir. 1991) (observing that judicial review is available only after the Secretary issues a final decision); *see also* 42 U.S.C. §§ 405(g)–(h), 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1130, 405.1136.

### B. The Complaint[2]

Doctor Howard Goldfaden, "is a licensed Medicare provider" who provides home healthcare and podiatric services to Medicare recipients. ECF No. 18 at PageID.358. In September 2018, MAC Defendant AdvanceMed opened an investigation into Goldfaden to determine whether he was filing credible claims for payments. *Id.* at PageID.367.

In June 2019, AdvanceMed suspended future Medicare payments to Goldfaden. *Id.* at PageID.368. The following month, AdvanceMed informed

---

[2] The operative complaint is actually an Amended Complaint filed on March 27, 2025, ECF No. 18, but for ease of reading, it will simply be referred to as the complaint.

Goldfaden that it would "begin a pre-payment review of [Goldfaden's] medical claims." *Id.* On July 10, 2019, Goldfaden submitted a rebuttal statement in reaction to the suspension. *Id.* The following day, AdvanceMed informed Goldfaden that it received his rebuttal statement "and told him to send any additional documents for [it] to consider." *Id.* at PageID.368–69; *see also* ECF No. 28-3. On July 29, 2019, Goldfaden mailed AdvanceMed "all of the requested materials." *Id.* at PageID.369.

On September 11, 2019, AdvanceMed issued a response to Goldfaden's rebuttal statement. ECF Nos. 18 at PageID.369; 28-4 at PageID.603–05.[3] In the response, AdvanceMed stated that "[a]fter reviewing the statement, supporting documentation, and the facts and law supporting the suspensions," Goldfaden's payment suspension would remain intact. ECF No. 28-4 at PageID.603. The response also outlined each of the key complaints that Goldfaden raised in his rebuttal, followed by an explanation as to why the suspension would remain. *Id.* at PageID.603–05.

---

[3] Although courts are generally limited to considering the four corners of the complaint when ruling on a motion to dismiss, *see Thomas v. Peterson*, No. 1:24-cv-11761, 2025 WL 2797146, at *4 (E.D. Mich. Sept. 30, 2025), courts may take judicial notice of documents "referenced in the Amended Complaint [that] are integral to [the] plaintiff's claims." *Yeldo v. MusclePharm Corp.*, 290 F. Supp. 3d 702, 708 (E.D. Mich. 2017). Accordingly, this Court takes judicial notice of the response to Goldfaden's rebuttal statement because it is integral to Goldfaden's claims. *See id.*

In November 2019, AdvanceMed sent Goldfaden an estimated overpayment determination. *Id.* at PageID.370. The following month, AdvanceMed sent Goldfaden a letter with "the extrapolated overpayment recoupment for both the probe audit and the statistical audit…for a total of $438,610.76." *Id.* Then in January 2020, Goldfaden received letters demanding that he pay that sum by February 15, 2020, with a 10.125% interest accruing every 30 days. *Id.* at PageID.371. The letters also acknowledged that Goldfaden had 30 days to appeal. *Id.*

On February 13, 2020, Goldfaden appealed,[4] "request[ing] a redetermination for all overpayments and all statistical documentation." *Id.* at PageID.372. In April 2020, Goldfaden received a redetermination decision "fully upholding the overpayment determination." *Id.*

Next, Goldfaden filed a request for reconsideration in May 2020. *Id.* at PageID.373. In July 2020, a QIC reviewed his case and issued a decision denying Goldfaden's appeal. *Id.* Goldfaden appealed the QIC decision to an ALJ in August 2020. *Id.* In January 2023, the ALJ ruled against Goldfaden. *Id.* at PageID.375.

---

[4] Although unclear from Goldfaden's complaint, it appears that Goldfaden appealed both the overpayment determination and the fees for the audits, which function together as the recoupment amount that the Secretary sought; but his appeal of the audit fees was untimely while the appeal of the overpayment determination was timely. *See* ECF No. 18 at PageID.372. Hence, it seems, he received a redetermination decision for the overpayment only. *See id.*

In March 2023, Goldfaden appealed the ALJ's decision to the Medicare Appeals Council. *See* ECF No. 15-4. By November 2024, Goldfaden's appeal was— and appears to still be—pending. *See* ECF Nos. 28-5 at PageID.606;[5] 30 at PageID.621, 623. Nevertheless, Goldfaden filed a lawsuit in this Court against Defendants. ECF No. 1.

In his complaint, Goldfaden generally alleges that Defendants' statistical sampling methodology and extrapolation procedures were flawed by biased samples and procedural noncompliance. ECF No. 18 at PageID.377–78. Goldfaden also generally claims that the slow administrative review process is causing irreparable injury because it is financially burdensome and effectively preventing him from continuing his practice. *Id.* at PageID.379–81.

Goldfaden presents two counts in his complaint, the first simply labeled "mandamus" against all Defendants and the second "fraud" against AdvanceMed only. *Id.* at PageID.381–82. In his first count, Goldfaden alleges that Defendants failed to review additional documentation provided in his rebuttal to the payment suspension, which he contends was a breach of their duties under the Medicare Act's

---

[5] *See Appeal Status Information – Docket No. M-23-2772*, DEPARTMENTAL APPEALS BD. MEDICARE OPERATIONS DIV. ELEC. FILING SYS., https://perma.cc/LEW8-ST66 (last visited June 30, 2026) (showing status as "Pending"). Because courts may take judicial notice of public records, this Court takes notice of the public records showing that Goldfaden has a pending appeal before the Medicare Appeals Council. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).

administrative review process. *Id.* at PageID.381. He elaborates that through his "[r]ebuttal [s]tatement and communications," Goldfaden asked Defendants "to review additional documentation, including medical records[;] however such request was denied." *Id.* Accordingly, Goldfaden seeks mandamus to compel the DHHS to review his full rebuttal statement. *Id.* at PageID.382.

Although not particularly clear, in his second count, Goldfaden appears to allege that AdvanceMed committed fraud by not reviewing his additional documents with his rebuttal statement despite representing to him that it would do so. *Id.* at PageID.382–83. He presents a generic allegation that AdvanceMed made false representations in the original payment suspension, and again appears to argue that AdvanceMed made a false representation by not reviewing the documents, despite acting as though it would comply with its obligation to do so under the Medicare Act. *Id.* at PageID.382–83.

In September 2025, Defendants filed motions to dismiss, arguing that the court lacks subject-matter jurisdiction because Goldfaden failed to exhaust his administrative remedies and alternatively that his claims should be dismissed because they were not adequately pleaded. ECF Nos. 27; 28. Goldfaden responded, ECF Nos. 30; 31, and the case was stayed briefly due to a lapse in appropriations, ECF Nos. 32–35.

Then in April 2026, Goldfaden filed a motion for injunctive relief, arguing that he was suffering irreparable harm as his payments remained suspended. ECF No. 36. In his motion, Goldfaden asked this Court to order Defendants "to repay all past amounts withheld . . . and commence full payment for all professional services rendered hereafter" until final resolution of the case. *Id.* at PageID.689.

This Court has determined that a hearing on these motions is not necessary and will decide them on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

Under Civil Rule 12(b)(1), a motion "to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack challenges the sufficiency of the pleading itself. In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party." *Stewart v. Mancester Cmty. Schs.*, 629 F. Supp. 3d 715, 720 (E.D. Mich. 2022) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "Essentially, the four-corners rule applies to facial attacks." *Thomas v. Peterson*, No. 1:24-cv-11761, 2025 WL 2797146, at *4 (E.D. Mich. Sept. 30, 2025) (citing *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)). But for a Rule 12(b)(1) motion attacking the factual basis for jurisdiction, "the district court has broad discretion over what evidence to consider and may look

- 10 -

outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp.*, 790 F.3d 641, 647 (6th Cir. 2015). "[F]or factual attacks, the court does not presume the truth of the jurisdictional facts in the pleadings . . . . So a court may dispose of the four-corners rule and 'weigh the evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* at *5 (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).

### III. ANALYSIS

"The Medicare Act contains its own statutory grant of subject-matter jurisdiction." *Westchester Mgmt.*, 948 F.2d at 281; *see also* 42 U.S.C. §§ 405(g)–(h); 42 U.S.C. § 1395ii (incorporating these sections of the Social Security Act into the Medicare Act). In most circumstances, the Secretary and MACS are entitled to sovereign immunity in federal lawsuits for claims arising under the Medicare Act. *See S. Rehab. Grp. v. Sec'y of Health & Hum. Servs.*, 732 F.3d 670, 678 (6th Cir. 2013); *see also id.* at 680 n.7 (collecting cases); 42 U.S.C. § 1395u(a) (noting that the administration of the Medicare Act is necessarily "conducted through contracts with [M]edicare administrative contractors"). This immunity extends to claims "'inextricably intertwined' with a claim for benefits, as these claims arise under the Medicare Act within the meaning of § 405(h). *Manakee Pro. Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 579 (6th Cir. 1995).

- 11 -

To waive this sovereign immunity and obtain judicial review of such claims under section 405(g), a plaintiff must satisfy two prerequisites: "First, a 'nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it to the court.' Second, a waivable requirement of exhaustion of administrative review." *S. Rehab. Grp.*, 732 F.3d at 678 (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 15, 26 (2000)); *see also Manakee*, 71 F.3d at 579 (noting that § 405(g) "with its administrative exhaustion prerequisite, provides the sole avenue for judicial review" of claims inextricably intertwined with claims for benefits—that is, claims arising under the Medicare Act).

Defendants present a facial attack[6] by arguing that this Court lacks jurisdiction over Goldfaden's claims because his claims arise under the Medicare Act and he has not exhausted his administrative remedies as the Medicare Act requires. ECF Nos. 27 at PageID.559; 28 at PageID.586, 591. Alternatively, Defendants argue that Goldfaden failed to state his claims with particularity upon which relief can be

---

[6] Goldfaden asserts Defendants' attack is factual, ECF Nos. 30 at PageID.622; 31 at PageID.656, but this is an inaccurate characterization of Defendants' arguments. Defendants challenge the legal effect of Goldfaden's failure to exhaust administrative remedies and the legal nature of his claims as they relate to jurisdiction. The only factual dispute appears to concern whether the rebuttal statement was properly reviewed, but the resolution of that factual issue does not impact whether this Court has jurisdiction. To be a factual attack, Defendants would need to challenge whether Goldfaden had exhausted his administrative remedies. But because they do not—nor does Goldfaden dispute this fact—the attack appears to be facial.

granted. ECF Nos. 27 at PageID.567; 28 at PageID.592. Goldfaden responds that this Court has jurisdiction because he "challenges the non-appealable procedural process used to suspend" his payments rather than the overpayment determination itself. ECF Nos. 30 at PageID.621; 31 at PageID.655. Notably, in these responses, Goldfaden's focus shifts from alleging that Defendants did not properly review his rebuttal statement by ignoring his accompanying documents, *see generally* ECF No. 18, to alleging that Defendants failed to respond to his rebuttal statement outright, *see* ECF Nos. 30 at PageID.625–26; 31 at PageID.659–60.

To determine whether this Court has jurisdiction, as a threshold issue, this Court must first assess whether Goldfaden's claims arise under the Medicare Act. *See Henry v. Azar*, 518 F. Supp. 3d 520, 526 (D.D.C. 2021) ("The first jurisdictional inquiry in a Medicare case such as this, is to determine whether the claims at issue 'arise under the Medicare Act and are, therefore subject to the unique jurisdictional requirements embedded in that statute."). If they do, this Court must then continue on to determine whether Defendants have waived sovereign immunity. *See Truett v. Bowman*, 288 F. Supp. 2d 909, 911 (W.D. Tenn. 2003) ("As evidence by the Medicare statutes, the Secretary's sovereign immunity is waived in only specific circumstances . . . ."). But if Goldfaden's claims *do not* arise under the Medicare Act, Defendants are not entitled to sovereign immunity, and this Court would have subject-matter jurisdiction over his case. *See id.* at 910–12. Because Goldfaden's

claims appear to ultimately function as challenges to the suspension of his payments, this Court finds that his claims arise under the Medicare Act.

## A. Arising Under the Medicare Act

As stated, the Medicare Act bars federal actions against the Secretary and MACS seeking "to recover on any claim arising under" the Act. 42 U.S.C. § 405(h). "The Supreme Court has [] reaffirmed that the 'arising under' language of § 405(h) must be read broadly." *Good Samaritan Med. Ctr. v. Sec'y of Health & Hum. Servs.*, 776 F.2d 594, 597 (6th Cir. 1985). Specifically, claims arise under the Medicare Act if (1) the "standing and the substantive basis for the presentation of the claims" is the Act, or (2) the claims are "inextricably intertwined" with a Medicare benefits claim. *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984). "'It is of no importance' that [a plaintiff] seeks only declaratory and injunctive relief and 'not an actual award of benefits.'" *Golden Home Health Care, LLC v. Verman*, No. 2:20-cv-2954, 2020 WL 5038619, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Ringer*, 446 U.S. at 615).

Generally, challenging the Secretary's procedures are "inextricably intertwined" with claims about benefits. *See Bisson v. Sec'y of Health & Hum. Servs.*, 787 F.2d 181, 183 (6th Cir. 1986); *see also Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir. 2000) (requiring courts the "examine whether the allegedly collateral claim involves completely separate issues from the party's claim that it is entitled to benefits or continued participation in the Medicare

- 14 -

program or whether it is inextricably intertwined with its substantive claim to benefits or participation"). Indeed, § 405(h) "demands the channeling of virtually all legal attacks through the agency." *Ill. Council*, 529 U.S. at 13.

Here, Goldfaden expressly states that he "seeks mandamus relief against [Defendants] for violations of Title XVII of the Social Security Act ('the Medicare Act') and its relevant rules and regulations . . . for damages sounding in part in Fraud." ECF No. 18 at PageID.355. Thus, it plainly appears that the Medicare Act is functioning as the substantive basis for how he presents his claims.[7] *See Ringer*, 466 U.S. at 614–15.

---

[7] Goldfaden's complaint does not provide a distinctive statutory basis for his fraud claims. In his response, he argues that it arises as a federal claim under 42 U.S.C. § 1320c-6(b)'s requirement that MACS exercise their duties with "due care." ECF No. 30 at PageID.638. But this statute does not appear to confer a private cause of action. *See Nayyar v. Mt. Carmel Health Sys.*, No. 2:10-cv-00135, 2010 WL 2667370, at *2–3 (S.D. Ohio July 1, 2010) (finding that 42 U.S.C. § 1320c-5 of the Medicare Act did not confer an express or implied private cause of action). And the fraud claim goes hand-in-hand with his first claim that this Court finds to be arising under the Medicare Act. *See Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984).

Goldfaden also presents the Michigan state-law standard for pleading a fraud claim, thereby suggesting that his fraud claim arises under state law. ECF No. 30 at PageID.639 (citing *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 133 F.4th 678, 686 (6th Cir. 2025)). But state fraud claims can also arise under the Medicare Act. *See S. Rehab. Grp.*, 732 F.3d at 674, 677 n.6, 680 ("State-law causes of action in the Medicare context are subject the same remedial scheme as [other benefits-related claims]."); *see also New Vision Home Health Care, Inc. v. Anthem, Inc.*, 752 F. App'x 228, 237–38 (6th Cir. 2018) (observing that state law fraud claims arise under the Medicare statute and therefore require presentation before the agency and administrative exhaustion). Thus, regardless whether Goldfaden's fraud claim is based in state or federal law, this Court finds that it arises under the Medicare Act.

To the extent that Goldfaden aims to circumvent this conclusion by arguing in his response brief that his "ultimate objective through the litigation" is actually "to obtain **a decision** from Defendants" and "not [to] challenge the substance of the nearly $440,000.00 overpayment determination," this approach is ineffective for three reasons. *See* ECF Nos. 30 at PageID.623, 625; 31 at PageID.657; *see also* ECF No. 31 at PageID.659.

First, regardless of his objective, the "standing and the substantive basis for the presentation of the claims" is still the Medicare Act given that it is the only explicit statutory basis by which he brings his suit. *See Ringer*, 466 U.S. at 614–15; *see also* ECF No. 18 at PageID.355. Indeed, his arguments in his response brief— that issues regarding the overpayment decision "are wholly separate from Defendants' independent statutory obligation to respond to Plaintiff's rebuttal regarding their decision to suspend payments"[8]—still invoke the Medicare Act as the statute by which the alleged obligation is established. ECF No. 30 at PageID.626.

Second, Goldfaden's attempts to reframe his arguments as purely procedural challenges are unavailing because again, he has not provided a different statutory

---

[8] It is not clear why Goldfaden makes the argument that Defendants did not consider the accompanying documents with his rebuttal statement when the response letter to the rebuttal statement explicitly states that Defendants considered Goldfaden's statement *and the records he provided*. *See* ECF No. 28-4 at PageID.603; *see also Yeldo*, 290 F. Supp. 3d at 708 (taking judicial notice of other attached documents integral to the claims at issue at the motion-to-dismiss stage).

basis beyond the Medicare Act, and even if he had, a response brief cannot cure a defective complaint. *See Geller v. Michigan*, No. CV-17-13233, 2019 WL 2150393 at *7 n.5 (E.D. Mich. Apr. 26, 2019) ("Courts have recognized that a plaintiff cannot use his response to a motion to dismiss as a vehicle to cure the defects in an operative complaint."), *report and recommendation adopted Boucher v. Michigan*, No. 17-13233, 2019 WL 2143203 (E.D. Mich. May 16, 2019); *see also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief . . . .").

Third, even if he had presented a purely procedural claim and objective, the Supreme Court expressly clarified that substantive *and procedural* claims are barred by section 405(h) if they arise under the Medicare Act. *Ringer*, 466 U.S. at 616. And the Sixth Circuit has held that, "[i]t is irrelevant to the jurisdictional issue whether [a plaintiff challenges] the method by which reimbursement is determined." *Good Samaritan*, 776 F.2d at 597. Because Goldfaden's arguments about the rebuttal review are presented to obtain relief in the form of having the suspension lifted, these are claims that arise under the Medicare Act.[9] *See Ringer*, 466 U.S. at 614 (holding

---

[9] Goldfaden perhaps also aims to build an argument on the assertion that his claims are not appealable. *see* ECF No. 30 at PageID.621, 626 (arguing that the motions should be denied because he challenges a "non-appealable procedural process used to suspend" his payments and adding that "**payment suspensions _are not appealable_, administratively or otherwise**"). But he has not fleshed out how this could be an exception to Defendants' sovereignty, especially considering that claims

that the plaintiffs' due process allegations were "at bottom, a claim that they should be paid for their [] surgery"); *see also Good Samaritan*, 776 F.2d at 597 (holding that the plaintiffs' constitutional challenges to the Secretary's computational methods were inextricably intertwined with claims arising under the Medicare Act); *Manakee*, 71 F.3d at 579 (holding that due process clause claims were inextricably intertwined with claims about entitlement to benefits because a positive ruling on the procedural claims would entitle the claimant to benefits and circumvent the Medicare Act's administrative review procedure).

Thus, this Court must proceed to determine whether sovereign immunity has been waived. *See Truett*, 288 F. Supp. 2d at 911. Goldfaden bears the burden of showing that Defendants' sovereign immunity has been waived. *See Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993).

## B. Waiver of Sovereign Immunity: Presentment and Administrative Exhaustion Requirements

Because Goldfaden's claims arise under the Medicare Act, Defendants are immune from his claims unless he satisfies the nonwaivable presentment requirement and the waivable administrative-exhaustion requirement. *S. Rehab. Grp.*, 732 F.3d at 678 (requiring the plaintiff to "present a claim to the agency [and exhaust his administrative remedies] before raising it to the court").

---

about rebuttal decisions and suspensions can culminate in an appealable decision. *See Midwest Fam. Clinic*, 998 F. Supp. at 767.

Accepting as true the allegations in the amended complaint, Goldfaden has presented his claims to the Secretary, thereby satisfying the presentment requirement. *See id.* But Goldfaden has not satisfied the second requirement because he filed this lawsuit before receiving a final decision from the Medicare Appeals Council. *See* ECF No. 28-5 at PageID.606. Accordingly, Defendants have not waived their sovereign immunity. *See S. Rehab. Grp.*, 732 F.3d at 680 (holding that the district court "correctly determined that it lacked subject-matter jurisdiction over" Medicare Act claims because the plaintiffs did "not fulfill[] the conditions placed on the limited waiver of immunity in the Medicare Act").

## C. Waiver of Administrative Exhaustion

However, as noted, the administrative exhaustion requirement is waivable. *See id.* at 678. When deciding whether to waive the administrative exhaustion requirement, "the Supreme Court identified three factors to be considered," which ask: "(1) are the claims at issue collateral to the underlying decision as to eligibility for entitlements; (2) would claimants be irreparably harmed were the exhaustion requirement enforced against them; and (3) would exhaustion of administrative remedies be futile." *Manakee*, 71 F.3d at 580 (citing *Bowen v. City of New York*, 476 U.S. 467, 482–86 (1986)).

### 1. Collateral Issue

Goldfaden first argues that he is entitled to a waiver of administrative exhaustion because he contends that his claims are entirely collateral, challenging "the procedure by which his claims for payment have been processed." ECF Nos. 30 at PageID.629, 631, 633; 31 at PageID.663, 665, 667. The Secretary replies that Goldfaden's claim is not collateral because he asserts an irregularity or "mere deviation" in proceedings insufficient for an exhaustion waiver. ECF No. 35 at PageID.682. As explained above, Goldfaden's claims about how his rebuttal statement was—or was not—processed appear inextricably intertwined with his challenge to payment suspension, not collateral. In fact, a challenge to a MAC's "approach to processing claims"—such as how it reviews a rebuttal statement—is foreclosed by Supreme Court precedent concerning "the jurisdictional hurdle in § 405(g) and (h)." *New Vision Home Health Care, Inc. v. Anthem, Inc.*, 752 F. App'x 228, 239 (6th Cir. 2018) (quoting *Bodimetric Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 486 (7th Cir. 1990)).

Goldfaden only refers to the Medicare Act and "fraud," without any assertions that his claims are constitutional or other kind of statutory collateral challenges. *See generally* ECF No. 18. But even if he had, constitutional challenges are barred where the questions arise under the Medicare Act. *See Moller v. CMS-Ctrs for Medicare & Medicaid Servs.*, 959 F. Supp. 2d 1031, 1033 (E.D. Mich. 2013). Thus, because this

Court has found that Goldfaden's claims arise under the Medicare Act, they are not collateral. And because "[o]nly in regard to a claim that is 'wholly collateral' to a claim for benefits could the exhaustion requirement of § 405(g) be waived," Goldfaden has not established entitlement to an exhaustion waiver on this ground. *See Manakee*, 71 F.3d at 580 (quoting *Ringer*, 466 U.S. at 618).

### 2. Irreparable Harm

Second, Goldfaden argues that the administrative exhaustion requirement should be waived because he and his patients will suffer irreparable harm if forced to exhaust his remedies, given that the "suspension of all further payments . . . plainly affects his livelihood and ability to continue his practice serving those who cannot otherwise obtain medical attention easily." ECF Nos. 30 at PageID.634–35; 31 at PageID.668–69. The Secretary replies that waiting for administrative review to proceed, even to the point of financial hardship, does not qualify as irreparable harm. ECF No. 35 at PageID.683. This Court finds that Goldfaden has not clearly demonstrated irreparable harm by being required to exhaust his administrative remedies.

First, Goldfaden has not established *irreparable* harm to his patients by briefly stating that the ongoing suspension impacts his "ability to continue his practice serving" his "homebound patients" who "cannot otherwise obtain medical attention easily." ECF No. 30 at PageID.634–35. The impact on patients may be relevant to

this inquiry. *See Cathedral Rock*, 223 F.3d at 364 (citing *Mediplex of Mass., Inc. v. Shalala*, 39 F. Supp. 2d 88, 98–99 (D. Mass. 1999)). But a general reference to the fact that his patients cannot receive medical care *easily* does not mean that they would have to be transferred to another provider or that they would not receive any care without Goldfaden. *See id.* (holding that even where a doctor would have to discharge and transfer all of his patients, this alone could not satisfy the irreparable-harm element because patients lack standing to challenge a determination) (citing *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 787–90 (1980)); *but see Markva v. Haveman*, 168 F. Supp. 2d 695, 719 (E.D. Mich. 2001) (finding that delaying or denying benefits constitutes irreparable harm to *patient plaintiffs* who would be effectively prevented from obtaining necessary medical care).

Second, Goldfaden generally claims that Defendants' conduct and the lengthy administrative review process have caused him to "expend significant financial resources to maintain his practice and is at great risk of significant present and future financial damages including in the loss of profit due to having to close down his practice due to the sheer lack of funds to meet financial obligations." ECF No. 18 at PageID.384; *see also* ECF No. 36. But "monetary damages do not generally constitute irreparable harm." *Manakee*, 71 F.3d at 581 (citing *Sampson v. Murray*, 415 U.S. 61, 90–91 (1974)). Furthermore, Goldfaden has not "provid[e]d proof that [the majority] of [his] business comes from Medicare payments" to support a claim

- 22 -

that he "will be forced out of business." *Midwest Fam. Clinic*, 998 F. Supp. at 772. And in fact, "financial doom does not necessarily constitute irreparable harm." *Id.* (quoting *Manakee*, 71 F.3d at 581) (cleaned up). Thus, Goldfaden has not shown irreparable harm to warrant a waiver of the administrative exhaustion requirement. *See id.*

### 3. Futility

Finally, Goldfaden argues that he is entitled to a waiver of the exhaustion requirement because "[a]n administrative process that has continued for five-years and counting is futile as it elevates the indisputable irreparable harm . . . . [And t]he lengthy and significant delay . . . has effectively denied [Goldfaden] review." ECF Nos. 30 at PageID.635; 31 at PageID.669. The Secretary disagrees, stating that delays do not render administrative exhaustion proceedings futile. ECF No. 35 at PageID.683. This Court finds that Goldfaden has not presented adequate reasons as to why administrative exhaustion would be futile.

The futility standard for administrative exhaustion is met "if there is no reasonable prospect that [the provider] could obtain any relief by pursuing them." *Manakee*, 71 F.3d at 581 (internal quotation marks and citation omitted). Here, Goldfaden takes issue with the lengthy process, but he does not allege, for example, that a favorable decision from the Medicare Appeals Council would not fully correct the damages Goldfaden's claims to have sustained. *See Bowen*, 476 U.S. at 484–85.

In fact, the Supreme Court has held that a "mere deviation from the applicable regulations," as Goldfaden alleges, is "fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation." *Id.* And his claim that the slow process has "effectively denied him review" is contradictory since the process itself is a review that he invoked. Thus, although Goldfaden "may not be pleased with delays stemming from an adherence to the strict limitation which Congress has placed on judicial review over Medicare disputes, the Supreme Court has instructed that compliance with the Medicare Act's prerequisites for judicial review . . . is mandatory." *Id.* at 581–82.

In sum, because Goldfaden's claims arise under the Medicare Act, he must exhaust administrative remedies or establish entitlement to waiver of this requirement. *See generally id.* But because he has done neither, his claims against Defendants are barred by Defendants' sovereign immunity, which deprives this Court of subject-matter jurisdiction to review his claims.[10] *See New Vision*, 752 F.

---

[10] This Court further finds that it lacks mandamus jurisdiction for Count I because Goldfaden failed to exhaust his administrative remedies, and mandamus jurisdiction expressly requires "exhaust[ing] all other avenues of relief." *BP Care, Inc. v. Thompson*, 398 F.3d 503, 514–15 (6th Cir. 2005) ("In order to justify mandamus jurisdiction, a plaintiff must show it has exhausted all other avenues of relief, and that the defendant owes the plaintiff a 'clear nondiscretionary duty.'") (quoting *Ringer*, 466 U.S. at 616). And in the absence of any federal jurisdiction for Count I, this Court would decline to exercise supplemental jurisdiction over Goldfaden's fraud claim in Count II, for which he provides no clear basis for federal jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *see also v. Cuyahoga Cnty., Ohio*, 517 F. App'x 431, 436 (6th Cir. 2013).

App'x at 239; *see also Whittle*, 7 F.3d at 1262 (affirming dismissal of claims against federal entities "based on lack of subject matter jurisdiction, because [the entities] have not waived their sovereign immunity"). Therefore, this Court will dismiss the case under Civil Rule 12(b)(1),[11] and Goldfaden's motion for a preliminary injunction will be denied as moot. *See* FED. R. CIV. P. 12(b)(1); *see also Wilburn v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 771 F. Supp. 3d 950, 962 (E.D. Mich. 2025) (denying a preliminary injunction as moot after having found that the amended complaint would be dismissed in full).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motions to Dismiss, ECF Nos. 27; 28, are **GRANTED,** hereby **DISMISSING THE AMENDED COMPLAINT**, ECF No. 18, and **CLOSING THE CASE**.

It is further **ORDERED** that Plaintiff's Motion for Injunctive Relief, ECF No. 36, is **DENIED AS MOOT**.

**This is a final order and closes the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 6, 2026

---

[11] As for Goldfaden's alternative request to file a second amended complaint with more specific pleadings, ECF Nos. 30 at PageID.641–42; 31 at PageID.671, this Court denies the request because it cannot be embedded in a response brief. *See* E.D. Mich. LR 7.1(i); 5.1(e).